UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SELMA MOY,

                     Plaintiff,

        v.

NAPOLI SHKOLNIK, PLLC, et al.,

                     Defendants.

23 Civ. 3788 (DEH)

**OPINION
AND ORDER**

DALE E. HO, United States District Judge:

       Plaintiff Selma Moy ("Moy" or "Plaintiff") brings this employment discrimination action against her former employer, Defendant Napoli Shkolnik, PLLC ("Napoli Shkolnik" or "the firm"), as well as Individual Defendants Paul Napoli, Marie Napoli, Gloria Werle ("Werle"), and Salvatore C. Badala ("Badala") (collectively, "Defendants"). Moy alleges that Defendants discriminated against and harassed her on the basis of her race, color, national origin, and gender; subjected her to a hostile work environment; and retaliated against her for complaining about discriminatory treatment against her and others, in violation of 42 U.S.C. § 1981 ("Section 1981"); the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*; the New York State Civil Rights Law ("NYSCRL"), N.Y. Civ. Rights. Law § 40 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.* For the reasons that follow, Defendants' Rule 12(b)(2)[1] motion to dismiss for lack of personal jurisdiction over Defendants Paul and Marie Napoli is **DENIED**, while Defendants' Rule 12(b)(6) motion to dismiss the Complaint for failure to state a claim is **GRANTED IN PART AND DENIED IN PART**.

---

[1] Unless otherwise noted, all references to "Rules" in this opinion refer to the Federal Rules of Civil Procedure.

**BACKGROUND**

### I.    Factual History

"The following facts are drawn from the [Amended] [C]omplaint and are assumed to be true for the purposes of this motion." *Cooper v. Templeton*, 629 F. Supp. 3d 223, 228 (S.D.N.Y. 2022), *aff'd sub nom. Cooper v. Franklin Templeton Invs.*, No. 22 Civ. 2763, 2023 WL 3882977 (2d Cir. June 8, 2023). [2]

### A.  The Parties

Moy is a Chinese American[3] woman with 28 years of experience as an attorney in private practice and as in-house counsel for an insurance company. *See* Am. Compl. ¶¶ 17, 25, ECF No. 16.  Moy was hired by Napoli Shkolnik "exclusively to be a [case] manager" without her own caseload; in this capacity, she would be "peripherally involved" with upcoming trials and jointly manage the firm's paralegal staff. *See id.* ¶¶ 25-26.  Moy additionally anticipated that part of her role would be to expand the firm's Chinese clientele. *Id.* ¶¶ 27-28.  Prior to her termination, Moy had not been made aware of any issues with her performance at Napoli Shkolnik. *See id.* ¶¶ 63-65.  Moy resides within the Southern District of New York. *See id.* ¶ 13.

Napoli Shkolnik is a law firm with a principal place of business in New York. *Id.* ¶ 18.  Moy worked at Napoli Shkolnik for approximately six months, from May 9, 2022, to November 14, 2022. *Id.* ¶ 17.

---

[2] In all quotations from cases, internal quotation marks, brackets, citations, ellipses, footnotes, and emphases are omitted unless otherwise indicated.

[3] While Moy raises claims of discrimination based on national origin, she does not allege facts expressly describing her national origin.  The Supreme Court has defined "national origin" as "the country where a person was born, or, more broadly, the country from which his or her ancestors came." *Espinoza v. Farah Mfg. Co., Inc.*, 414 U.S. 86, 88 (1973).  The Court infers based on Moy's allegation that she is "Chinese American" that she is of Chinese national origin.

Individual Defendant Paul Napoli is a white male and a resident of Puerto Rico. *Id.* ¶¶ 12 n.1, 19. During the relevant period, he was a principal at Napoli Skholnik and Plaintiff's employer. *Id.* ¶ 19. In May 2022, Moy was recruited by Paul Napoli to join Napoli Shkolnik, as "Department Head" of its personal injury department. *See id.* ¶¶ 17, 19.

Individual Defendant Marie Napoli is a white female and a resident of Puerto Rico. *Id.* ¶¶ 12 n.1, 20. During the relevant period, she was a principal at Napoli Skholnik and Plaintiff's employer. *Id.* ¶ 20. Moy interviewed with Marie Napoli when she was hired by the firm. *See id.* ¶ 27. Prior to November 2022, Marie Napoli had written Moy at least two emails detailing her satisfaction with Moy's work. *See id.* ¶ 63.

Individual Defendant Salvatore C. Badala ("Badala") is white male. *Id.* ¶ 21. During the relevant period, he was General Counsel of Napoli Skholnik and an employer of Plaintiff. *Id.*

Moy describes Individual Defendant Gloria Werle ("Werle") as "a white skinned female." *Id.* ¶ 22. During the relevant period, she was the Chief Operating Officer and Director of Human Resources of the firm and an employer of Plaintiff. *Id.*

**B. The Organizational Chart and Moy's Complaint**

In August 2022, about three months after her employment at the firm commenced, Moy observed that she had been excluded from the firm's organizational chart. *See id.* ¶ 29. After Moy complained, the firm issued a new organizational chart that included Moy but excluded a different attorney at the firm, Heather Palmore ("Palmore"), who is an African American woman. *See id.* ¶¶ 29-30. The new chart also excluded or misclassified other attorneys of color. *See id.* ¶ 30. Moy emailed, *inter alia*, Individual Defendants Paul Napoli, Marie Napoli, and Werle "with complaints that the chart had errors in it and set out [] information regarding the exclusion and demotion of the employees of color." *See id.* ¶ 31. A paralegal represented that

although Palmore had been included in an earlier organizational chart, she "was taken off the chart because she did not have a caseload and had no case management team assigned to her." *Id.* ¶¶ 32, 33.

### C. The Aftermath

#### 1. *Exclusion from Meetings and Opportunities*

After Moy complained about the organizational charts and showed support for Palmore, Moy was excluded from meetings. *Id.* ¶¶ 34, 44-b, 44-c. When Moy asked Defendants why she was excluded, Individual Defendants Paul Napoli and Werle informed her that they had not "want[ed] to bother [Moy] when she was preparing for a trial." *Id.* ¶ 35. Additionally, Moy's contacts "in the form of input and meetings" with Paul Napoli decreased from "daily" in May 2022 to none by August 2022. *See id.* ¶ 44-f.

Moy was also generally "excluded and left out of discussions[ and] opportunities, and [was] denied input into decisions." *Id.* ¶ 44-b. For example, "Moy was denied any opportunity to engage her experience and abilities in" medical malpractice and nursing home cases. *Id.* ¶ 44-k. Moy offered to use her contacts with insurance carriers to try to help settle the firm's medical malpractice cases but was rejected. *Id.* ¶ 44-h. Joseph, or Joe, Ciaccio ("Ciaccio"), a white male at the firm, later attempted to use these same contacts. *Id.* ¶¶ 44-h to 44-j.

#### 2. *Changes to Moy's Role at the Firm*

After Moy complained about the organizational charts and showed support for Palmore, Defendants changed Moy's job title from "Department Head" to "Co-Department Head." *Id.* ¶ 37. Moy was also "demoted" without notice to the role of supervising attorney of the firm's New York City office. *Id.* ¶ 36. Paul Napoli told Moy that while she was still a Department Head, a different attorney—Ciaccio—"would be running everything for now" while Moy ran the

4

New York City office. *Id.* ¶ 37. Additionally, Moy's "management duties were in essence eliminated when she was excluded from meetings." *Id.* ¶ 74.

Defendants also "made efforts to change [Moy's] job duties from being a manager [of other attorneys] to [personally] handling [her own] case load of 100 cases." *Id.* ¶ 38. Moy resisted this change, as she had not been hired to handle a caseload and as Defendants had not offered to assign her support staff to handle the proposed caseload. *Id.* Moy alleges that Defendants' attempt to assign her cases "was a clear message that Plaintiff was to stay in her place and not raise questions about her treatment and the treatment of others." *Id.* While Moy was never assigned the cases, she was directed to serve as the "second attorney" to a white male, Joseph Napoli, on a number of his cases, without "authority to resolve those cases." *Id.* ¶ 44-n. Defendants told Moy that she had been assigned to Joseph Napoli's cases so that she "could learn from him." *Id.* ¶ 44-r. Moy characterizes this assignment as a "further disrespect" to her reputation within Napoli Shkolnik. *Id.*

Finally, although Moy had anticipated that part of her role would be to expand the firm's Chinese clientele, she was not given the opportunity to do so. *See id.* ¶ 44-g.

### D. Disparate Treatment

Moy alleges that she was disparately treated compared to white men at the firm generally, and as compared to Ciaccio, specifically. As to the former, Moy never received staff support (despite repeated requests) while white male attorneys who worked under her all had support staffs. *See id.* ¶ 44-a. And "unlike her White male counterparts, [Moy] was excluded from meetings she was supposed to be a part of." *Id.* ¶ 44-c.

Ciaccio—Moy's white, male Co-Department Head—had approximately 11 years of work experience, while Moy "possessed more than double the amount of experience of Mr.

Ciaccio." *Id.* ¶ 44-j.  Ciaccio was not admitted to practice law in New Jersey, while Moy was. *Id.*  Ciaccio "only covered court appearances.  He did not conduct depositions or trials on a routine basis, and did not write motions.  In contrast, Ms. Moy was required to do all those duties without the support provided to Mr. Ciaccio." *Id.* ¶ 44-o.  Notwithstanding these differences, Ciaccio supervised paralegals and a case management team, while Moy did not. *See id.* ¶ 44-o. When Moy attempted to use one of Ciaccio's paralegals to work on a trial, Ciaccio informed her that she "had to go through him" to use his paralegals. *See id.* ¶ 44-p.

### E.  Other Incidents

Moy describes other incidents during which she felt offended or disregarded.  As relevant here, Moy alleges that although Napoli Shkolnik created a Diversity, Equity, and Inclusion ("DEI") task force in August 2022, it did not take the task force seriously. *See id.* ¶¶ 45-57.  For example, when Palmore requested that a question-by-question breakdown of DEI survey results be circulated to the entire firm, Werle "refused to circulate these results and instead said she would only provide the breakdown to" employees upon request. *Id.* ¶¶ 50-51.  In response to an employee's question about discrimination within Napoli Shkolnik, Werle stated, "As a Latina woman . . . , I have never experienced discrimination, so I don't know what you mean by discrimination." *Id.* ¶ 52.  Although Moy was not directly involved in these interactions, she was "offended" by them. *See id.* ¶ 53.  Moy asserts that in general, her attempts to address DEI issues with the firm's principals were met with non-specified "hostile and irrational responses." *See id.* ¶ 59.

### F.  Termination

On November 14, 2022, Moy was terminated during a telephone call with Werle and Badala. *See id.* ¶ 69.  Werle and Badala told Moy that she was a "smart woman" and "super hard

working" but "did not have the skills to do her job at the [f]irm." *Id*. Moy also received a "termination memo" via email. *See id.* ¶ 72.

### G. Post-Termination

After her termination from Napoli Shkolnik, Moy began a new job at a different law firm. "[W]ithin the first week of her new employment," Badala wrote a letter to this new firm, requesting that they "voluntarily withdraw as counsel" from 226 ongoing cases. *See id.* ¶¶ 90-91. This letter claimed that voluntary withdrawal by Moy's new firm was "necessitated by your firm's recent decision to hire Selma Moy . . . who was our former Department Head of the Personal Injury Group." *Id.* ¶ 92. Badala's letter cited a purported statutory conflict of interest, *see id.* ¶ 93, which Moy disputes as inapplicable, as she did not maintain an active caseload at Napoli Shkolnik, *see id.* ¶¶ 95-96. To Moy's knowledge, Napoli Shkolnik has not taken further action since sending the letter to Moy's new firm in late 2022. *See id.* ¶ 96.

### II.    Procedural History

Plaintiff filed suit against her former employers on May 4, 2023. *See* ECF No. 1. On August 25, 2023, Moy filed her Amended Complaint, the operative pleading in this suit. *See* Am. Compl. On October 6, 2023, Defendants filed the motion to dismiss now before the Court. *See* ECF No. 21. On October 15, 2023, the case was reassigned to the undersigned. *See* Oct. 15, 2023, Min. Entry.

### DISCUSSION

Moy asserts seven causes of action against Defendants: discrimination and harassment/hostile work environment, in violation of Section 1981 (Count I); (2) retaliation in violation of Section 1981 (Count II); discrimination and harassment/hostile work environment, in violation of the NYSHRL (Count III); retaliation in violation of the NYSHRL (Count IV);

discrimination and harassment/hostile work environment in violation of the NYCHRL (Count V); retaliation in violation of the NYCHRL (Count VI); and violations of NYSCRL (Count VII).[4]  *See* Am. Compl. ¶¶ 98-145.  Defendants assert that the Court lacks personal jurisdiction over non-domiciliary Defendants Paul and Marie Napoli, who are full-time residents of Puerto Rico, and that Moy has failed to state a claim upon which relief may be granted.  *See* Defs.' Mem. of L. in Supp. of Mot. to Dismiss ("Defs.' Br.") 1, ECF No. 22.  As discussed below, Defendants' Rule 12(b)(2) motion is denied while Defendants' Rule 12(b)(6) motion is granted in part and denied in part.

## I.    Rule 12(b)(2) Motion

### A.  Legal Standards

Plaintiffs opposing a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction "ha[ve] the burden of establishing that the court has jurisdiction over the defendant." *BHC Interim Funding, LP v. Bracewell & Patterson, LLP*, No. 02 Civ. 4695, 2003 WL 21467544, at *1 (S.D.N.Y. June 25, 2003).  To meet this burden at the motion to dismiss stage, plaintiffs must plead facts that are legally sufficient for a showing of jurisdiction.  *See Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001).  While the Court must construe all of a plaintiff's allegations as true and resolve all inferences in the plaintiff's favor, *see Porina v.*

---

[4] As Defendants state, the NYSCRL "provides for penalties" "under the New York Executive Law §§ 292 *et seq.*"  *See* Def.s' Br. 7 n.3.  *See also Illiano v. Mineola Union Free Sch. Dist.*, 585 F. Supp. 2d 341, 352 (E.D.N.Y. 2008) ("A valid cause of action based on a violation of the NYHRL exposes the defendant to civil penalties under Section 40–c of the New York Civil Rights Law, recoverable by the person aggrieved.").  Accordingly, in this Opinion & Order, the Court "use[s] the collective term NYSHRL to refer to the New York State Executive Law § 296 and its affiliated New York State Civil Rights Law §§ 40–c, 40–d, which authorize penalties."  *De la Rosa v. 597 Broadway Dev. Corp.*, No. 13 Civ. 7999, 2015 WL 7351540, at *18 (S.D.N.Y. Aug. 4, 2015), *report and recommendation adopted in part*, No. 13 Civ. 7999, 2015 WL 7308661 (S.D.N.Y. Nov. 19, 2015).

*Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008), plaintiffs cannot meet their burden at the motion to dismiss stage simply by relying on "conclusory statements without any supporting facts." *Art Assure Ltd., LLC v. Artmentum GmbH*, No. 14 Civ. 3756, 2014 WL 5757545, at *2 (S.D.N.Y. Nov. 4, 2014).

To determine whether it may exercise personal jurisdiction over non-domiciliary defendants, the Court must engage in a two-step analysis. *See Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163-64 (2d Cir. 2010). First, the Court must ask whether New York's long-arm statute, N.Y. C.P.L.R. § 302, permits the exercise of specific personal jurisdiction over the defendants. *See Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004). As relevant to this case, § 302(a)(1) of the long-arm statute allows courts to exercise personal jurisdiction over a defendant who is not domiciled in New York where that defendant "transacts any business within the state or contracts anywhere to supply goods or services in the state." Under § 302(a)(1), an exercise of personal jurisdiction over a corporate defendant can be extended to reach individual corporate officers, provided that the plaintiff shows that the corporation "engaged in purposeful activities in [New York] in relation to Plaintiff's transaction for the benefit of and with the knowledge and consent of the individual defendant." *Ramiro Aviles v. S & P Global, Inc.*, 380 F. Supp. 3d 221, 261 (S.D.N.Y. 2019). Stated differently, a court may only assert personal jurisdiction over an individual corporate officer under § 302(a)(1) based on the in-state activities of the corporate defendant where the individual officer "play[ed] a part in the activities that give rise to the action." *Id.*

Second, if personal jurisdiction is permissible under the long-arm statute, then the Court must ensure that its exercise of personal jurisdiction "comports with the Due Process Clause of the United States Constitution." *See Chloé*, 616 F.3d at 164. This Due Process analysis asks

whether the defendant has sufficient "minimum contacts" with the forum state to justify the exercise of specific personal jurisdiction and whether exercising jurisdiction over the particular defendant aligns with "traditional notions of fair play and substantial justice." *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

### B.  Application

Defendants Paul and Marie Napoli argue that this Court lacks personal jurisdiction over them because they both "reside and work in Puerto Rico," and Moy "cannot demonstrate a statutory basis for jurisdiction . . . with respect to each claim." *See* Defs.' Br. 4-6. As discussed further herein, the Court concludes that Defendants' arguments are unavailing and denies Defendants' Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction.

### 1.  *New York's Long-Arm Statute*

Moy argues that the Court's exercise of personal jurisdiction over Paul and Marie Napoli would be appropriate under both N.Y. C.P.L.R. § 302(a)(1) and § 302(a)(3). Beginning with the former, § 302(a)(1) provides in relevant part that "a court may exercise personal jurisdiction over any non-domiciliary . . . who . . . transacts any business within the state." N.Y. C.P.L.R. § 302(a)(1). To exercise personal jurisdiction over a non-domiciliary party under this section, the Court must determine "(1) whether the defendant 'transacts any business' in New York, and, if so, (2) whether this cause of action arises from such a business transaction." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007). A claim "aris[es] from" a particular transaction within the meaning of § 302(a)(1) "when there is some articulable nexus between [the] business transacted and the cause of action sued upon." *Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006). Moreover, when a party communicates in order to "effectuate some purposeful business in New York," personal jurisdiction under § 302(a)(1) may

be asserted over that party, even if the party "never actually entered the state." *Pickett v. Migos Touring, Inc.*, 420 F. Supp. 3d 197, 204 (S.D.N.Y. 2019).

Throughout her pleadings, Moy details many instances in which Defendants conducted business in New York. Moy worked out of Napoli Shkolnik's New York office, and Paul Napoli was Moy's direct superior, with whom Moy once regularly met. *See* Am. Compl. ¶¶ 44-e, 44-f. Moy and the Napolis frequently communicated with one another via email and phone call. *See, e.g., id.* ¶¶ 31, 37, 39, 44-l, 44-r. The Napolis "made it clear to [Moy] in emails that she would not get any support or help like the other male attorneys in the Department." *Id.* ¶ 73. These activities satisfy the Court's personal jurisdiction requirements under § 302(a)(1). Paul and Marie Napoli's supervision of and/or communications with Moy—whether via email, call, or in person—constitute the effectuation of "some purposeful business in New York," as Moy was based in New York. *See Pickett*, 420 F. Supp. 3d at 204; *see also Palmore v. Napoli Shkolnik*, No. 23 Civ. 1616, 2024 WL 1330003, at *8 (S.D.N.Y. Mar. 28, 2024) ("These activities, undertaken by law firm partners in relation to their attorney employee located in New York, effectuate some purposeful business in the state.").

Additionally, Moy's causes of action regarding her treatment at the firm have an "articulable nexus" with the Napolis' business transactions in New York, *see Solé Resort*, 450 F.3d at 103, as Moy alleges that Paul and Marie Napoli were responsible for creating or enabling the conditions of her unfavorable treatment at Napoli Skolnik. Moy alleges that Paul Napoli was responsible for demoting her and for excluding her from the organizational chart, *see* Am. Compl. ¶ 44-e; she also alleges that both Napolis denied her access to a case support team while providing such supports to her white male colleagues, *see id.* ¶ 73. Moy therefore describes discrete instances in which both Paul and Marie Napoli played a part in the alleged

11

discriminatory conduct. Accordingly, the Court may properly assert personal jurisdiction over Paul and Marie Napoli pursuant to § 302(a)(1) of New York's long-arm statute.[5]

### 2. *Due Process Clause*

Before the Court concludes that it may exercise personal jurisdiction over Defendants, it must assure itself that doing so comports with the Due Process Clause. *See Chloé*, 616 F.3d at 164 (describing this as the second step in the personal jurisdiction analysis). This inquiry asks whether the non-domiciliary defendant has sufficient "minimum contacts" with New York, such that the court's exercise of personal jurisdiction does not "offend traditional notions of fair play and substantial justice." *See Int'l Shoe Co.*, 326 U.S. at 316.

While there are theoretically cases in which personal jurisdiction could be permissible under § 302(a)(1) of New York's long-arm statute yet prohibited by the Due Process Clause, the Second Circuit has cautioned that it "would expect such cases to be rare." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013) (noting further that the court was aware of "no such decisions"). This case does not present one of those rare exceptions, and indeed, the Napolis do not contest the Court's exercise of personal jurisdiction on Due Process Clause grounds. *See* Defs.' Br. 5 (arguing that the Court lacks a statutory basis for personal jurisdiction "irrespective of any Due Process analysis"). Accepting Moy's pleadings as true for the purposes of deciding this motion, the Napolis are principals at a New York-based law firm within this district, *see* Am. Compl. ¶¶ 13, 18-20, and, as described *supra*, have conducted

---

[5] Because the Court concludes that the exercise of personal jurisdiction over the Napolis is permissible under § 302(a)(1), it does not address Plaintiff's alternative argument for asserting personal jurisdiction under § 302(a)(3). *See Pearson Educ., Inc. v. ABC Books, LLC*, No. 19 Civ. 7642, 2020 WL 3547217, at *4 (S.D.N.Y. June 30, 2020) ("Because the Court concludes that personal jurisdiction is proper under § 302(a)(1), it need not determine whether it would also be proper under § 302(a)(3).").

business in New York, including with Plaintiff.  They therefore have had sufficient "minimum contacts" with New York for the exercise of personal jurisdiction over them to comport with the Due Process Clause.  *See Astor Chocolate Corp. v. Elite Gold Ltd*., 510 F. Supp. 3d 108, 127 (S.D.N.Y. 2020) ("This purposeful availment of the privilege [of] doing business in New York with a New York resident is sufficient to establish minimum contacts under the Due Process Clause.").

## II.    Rule 12(b)(6) Motion

The Court begins its discussion by stating the legal standards applicable to each of Moy's Rule 12(b)(6) claims.

In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *See Giunta v. Dingman*, 893 F.3d 73, 79 (2d Cir. 2018).  A court may not dismiss claims unless the plaintiff has failed to plead facts sufficient to state a claim to relief that is facially plausible.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That is, a plaintiff must allege facts showing "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[W]hile a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss, it must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014). "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L–7 Designs, Inc.*

*v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).  A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

### A.  Employment Discrimination

Taking the allegations in the Amended Complaint as true and drawing all reasonable inferences in Moy's favor, the Court concludes that Moy has plausibly alleged federal, state, and city employment discrimination claims.

### 1.  *Section 1981*

#### a.  Legal Standard

Section 1981 "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." *Patterson v. County of Oneida*, 375 F.3d 206, 224 (2d Cir. 2004).[6]  Where, as here, the plaintiff does not purport to present "direct evidence of discrimination," her complaint must instead "be plausibly supported by facts alleged in the complaint [] that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).

When this motion was filed, courts in this Circuit held that to allege an adverse employment action, a plaintiff was required to have endured some "*materially significant disadvantage* with respect to the terms of the plaintiff's employment." *Id.* at 312 n.10 (emphasis

---

[6] Defendants argue that Section 1981 does not extend to Moy's national origin discrimination claim. *See* Defs.' Br. 6 n.2.  That is incorrect.  "The Second Circuit has established that racial discrimination, for purposes of § 1981, includes discrimination based on ancestry or ethnic characteristics." *Bautista v. PR Gramercy Square Condo.*, 642 F. Supp. 3d 411, 423 (S.D.N.Y. 2022).  Section 1981 therefore encompasses Moy's national origin discrimination claim.

in original).  But the landscape has changed since the Supreme Court's decision in *Muldrow v. City of St. Louis*, 144 S. Ct. 967 (2024).  *Muldrow* is a case brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq*.  But "[i]n analyzing § 1981 claims, [courts] apply the same standards as in Title VII cases."  *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000); *Cadet v. All. Nursing Staffing of N. Y., Inc.*, 632 F. Supp. 3d 202, 222 (S.D.N.Y. 2022) ("Hostile work environment, disparate treatment, and retaliation claims are analyzed in the same manner and under the same tests under both Title VII and Section 1981.").  *Muldrow* is therefore applicable here.  In that case, the Supreme Court resolved a Circuit split and rejected decisions of various Courts of Appeals—including the Second Circuit's—that required plaintiffs to allege "materially significant" employment actions.  *See Muldrow*, 144 S. Ct. at 973 n.1, 974.  Instead, plaintiffs need only allege "some harm respecting an identifiable term or condition of employment," but that harm need not be "significant . . . [o]r serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar."  *Id.* at 974; *see also Anderson v. Amazon.com, Inc.*, No. 23 Civ. 8347, 2024 WL 2801986, at *10 (S.D.N.Y. May 31, 2024) (applying *Muldrow* to a Section 1981 claim and explaining that the employment action alleged in either context "need not be *materially* adverse").

A minimal inference of discriminatory intent can arise from a variety of circumstances, including "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group, or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge."  *Littlejohn*, 795 F.3d at 312.

### b.  Application

It is undisputed that Moy is a member of protected classes and that she was qualified for her position.  And there can be no doubt that Moy's termination was an adverse employment action.  *See Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (describing termination as an example of an adverse employment action).  The Court next considers whether being "reduced" to Co-Department Head, Am. Compl. ¶ 36, was also an adverse action.  Again, Moy "need show only some injury respecting her employment terms or conditions."  *Muldrow*, 144 S. Ct. at 977.  Moy plausibly meets this burden.  In her new role as Co-Department Head, Moy supervised the firm's New York City office (instead of "running everything" in the Personal Injury Department).  Am. Compl. ¶ 37.  Moy was also directed to serve as the "second attorney" to a white male, without "authority to resolve those cases."  *Id.* ¶ 44-n.  She was denied opportunities to, *inter alia*, engage in medical malpractice and nursing home cases.  *Id.* ¶ 44-k.  She was "excluded from meetings," and her "case management duties were in essence eliminated."  *Id.* ¶ 74.  All of this is sufficient to allege an adverse employment action.

Having determined that Moy has successfully alleged at least two viable adverse employment actions, the Court next considers whether there is "at least minimal support for the proposition that [Defendants were] motivated by discriminatory intent" in taking those actions against her.  *Littlejohn*, 795 F.3d at 311.  Moy does not allege direct evidence of discrimination.  She seeks instead to establish circumstantial evidence of discriminatory intent.  "[A]n inference of discrimination . . . arises when an employer replaces a terminated or demoted employee with an individual outside the employee's protected class."  *Id.* at 312-13.

Here, Moy does not allege that she was, after her termination, replaced by an individual outside her protected classes.  *See generally* Am. Compl.  However, she alleges that she was

demoted when her role at the firm changed and she was given the less prestigious title of Co-Department Head.  And Moy further alleges that Ciaccio, who—despite having less experience than Moy—was tasked with "running everything" in the Personal Injury Department in Moy's stead, thereby replaced Moy.  *See* Am. Compl. ¶¶ 36-37 (alleging that Moy would be relegated to the role of supervising attorney while Ciaccio "would be running everything for now"); *id*. ¶ 44-o (alleging that Moy "possessed more than double the amount of experience of Mr. Ciaccio"). At this early stage of the litigation, such factual allegations are "sufficient to make plausible [Moy's] claim that her demotion occurred under circumstances giving rise to an inference of discrimination." *Littlejohn*, 795 F.3d at 313 (further noting that where a plaintiff "alleges that she was replaced by a white ACS employee" who "was less qualified for the position," plaintiff raised an inference of discrimination sufficient to survive dismissal).  Moy's Section 1981 employment discrimination claims therefore survive.

### 2.  *NYSHRL and NYCHRL*[7]

Moy alleges race, color, national origin, and gender-based discrimination in violation of NYSHRL and NYCHRL.  *See* Am. Compl. ¶¶ 113, 125.  For the reasons discussed herein, Defendants' motion to dismiss each of these claims is denied.

---

[7] In 2019, the New York State Legislature amended the NYSHRL to direct courts to construe it, like the NYCHRL, "liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of [the NYSHRL], have been so construed."  N.Y. Exec. Law § 300.  "[C]ourts agree that the amendments do not apply retroactively." *Europe v. Equinox Holdings, Inc*., No. 20 Civ. 7787, 2022 WL 4124763, at *7 n.10 (S.D.N.Y. Sept. 9, 2022); *see also Livingston v. City of New York*, 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021).  Here, all of Moy's claims accrued after 2019.  Accordingly, the Court assesses Moy's NYSHRL and NYCHRL claims together.

### a.  Legal Standard

Under the NYCHRL, "[t]he plaintiff need not prove any adverse employment action; instead, [she] must prove that something happened that would be reasonably likely to deter a person from engaging in protected activity." *Benzinger v. Lukoil Pan Americas, LLC*, 447 F. Supp. 3d 99, 129 (S.D.N.Y. 2020).  Where, as here, the plaintiff relies on circumstantial evidence, she must show that similarly situated comparator employees "were treated better than the plaintiff was." *Wilson v. JP Morgan Chase Bank, N.A.*, No. 20 Civ. 4558, 2021 WL 5179914, at *5 (S.D.N.Y. Nov. 8, 2021); *see also Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (holding that a plaintiff need only show that she was treated "less well" because of her employer's discriminatory intent).  Under the NYCHRL, even a single discriminatory comment made by an employer may be actionable.  *See Mihalik*, 715 F.3d at 113.  "When applying this standard, however, district courts must be mindful that the NYCHRL is not a general civility code." *Id.* at 110.  "The plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive.  It is not enough that a plaintiff has an overbearing or obnoxious boss.  She must show that she has been treated less well at least in part *because of* her [protected characteristics]." *Id.*; *see also Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 579 (S.D.N.Y. 2023) (The NYCHRL "does not apply to conduct that a reasonable victim would consider petty slights and trivial inconveniences.").

### b.  Application

Construing the NYCHRL "liberally for the accomplishment of its uniquely broad and remedial purposes thereof," as the Court is required to do, *Brooklyn Ctr. for Indep. of the Disabled v. Metro. Transportation Auth.*, 11 F.4th 55, 68 (2d Cir. 2021), the Court concludes that Moy's state and city employment discrimination claims survive dismissal.

18

Moy has alleged that "unlike her White male counterparts," she "was excluded from meetings she was supposed to be a part of – including: partners meetings, trials status/assignments, high value cases aka 'Million Dollar cases', claims meetings, some case management meetings and finance meetings." Am. Compl. ¶ 44-c. While Ciaccio, Moy's white, male Co-Department Head, "ha[d] paralegals, and a case management team for his assigned caseload," Moy did not have access to similar resources. *Id.* ¶ 44-o. Additionally, while "all white male attorneys in the Department[] had trial support," Moy did not. *Id.* ¶ 44-q. Under the "broad and remedial purposes" of the NYCHRL, these allegations are "sufficient to state a claim" at this stage of the litigation. *Lenart v. Coach Inc.*, 131 F. Supp. 3d 61, 69 (S.D.N.Y. 2015); *see, e.g.*, *Novio v. New York Acad. of Art*, 286 F. Supp. 3d 566, 584 (S.D.N.Y. 2017) (concluding that the plaintiff alleged facts sufficient to survive a motion to dismiss where she alleged the defendant's "comments were directed only at female students and that his physical hugging and touching was focused only toward women."); *Torre v. Charter Commc'ns, Inc.*, 493 F. Supp. 3d 276, 285-86 (S.D.N.Y. 2020) (finding claims sufficiently pled where the plaintiff alleged that comparators were "paid more than she was, despite having similar responsibilities and equal or lesser credentials").

"To be sure, discovery may reveal that Plaintiff's allegations ultimately amount to trivial inconveniences that are not actionable under the NYCHRL; but, at the pleading stage, the Court cannot conclude that Plaintiff has failed to state a claim as a matter of law." *Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 416 (S.D.N.Y. 2017). Accordingly, Defendants' motion to dismiss Moy's state and city employment discrimination claims is denied.

19

### B. Hostile Work Environment

For the reasons set forth herein, Moy's federal hostile work environment claim is dismissed but her state and city claims survive.

#### 1. Section 1981

##### a. Legal Standard

To plausibly allege a claim of hostile work environment under Section 1981, a plaintiff must first demonstrate "that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Rivera v. Rochester Genesee Regional Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014). To do so, a plaintiff must plead "both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Isbell v. City of New York*, 316 F. Supp. 3d 571, 591 (S.D.N.Y. 2018) (citing *Littlejohn*, 795 F.3d at 321). "Factors that may be considered include: [1] the frequency of the discriminatory conduct; [2] its severity; [3] whether it is physically threatening or humiliating, or a mere offensive utterance; and [4] whether it unreasonably interferes with an employee's work performance." *Doyle v. Am. Glory Rest. Corp.*, No. 23 Civ. 7624, 2024 WL 1466161, at *5 (S.D.N.Y. Apr. 4, 2024). "Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002).

Next, it is 'axiomatic'" that the plaintiff must demonstrate that she was subjected to the abusive working environment "because of [her] protected characteristic[s].'" *Lloyd v. Holder*, No. 11 Civ. 3154, 2013 WL 6667531, at *11 (S.D.N.Y. Dec. 17, 2013) (quoting *Brown v.*

*Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)); *see also Rivera*, 743 F.3d at 20 ("[A] plaintiff must plausibly allege that the hostile work environment was caused by animus towards her as a result of her membership in a protected class."). Courts must consider the totality of the employment circumstances when making this determination. *See Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003).

### b. Application

In considering the totality of the circumstances, the Court concludes that the Amended Complaint does not allege facts to allow a jury to find "that [Moy] was subjected to conduct that was sufficiently severe or pervasive, either in isolation or when viewed as a whole, to create a hostile work environment." *Davis-Molinia v. Port Auth. of N. Y. & N. J.*, No. 08 Civ. 7584, 2011 WL 4000997, at *11 (S.D.N.Y. Aug. 19, 2011), *aff'd*, 488 F. App'x 530 (2d Cir. 2012). Moy therefore fails at the threshold to allege a Section 1981 hostile work environment claim.

Purportedly in support of her claim, Moy lists anecdotes about firm employees belonging to various protected groups who left the firm or were terminated. Am. Compl. ¶¶ 78-89; *see also* Pl.'s Mem. of L. in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n") 14, ECF No. 28 (asserting "the disparate treatment of Black and Brown employees as well as the disparate treatment of other employees identified as minorities"). Moy notes other incidents in which she felt "offended" or "disregarded" at the firm. Am. Compl. ¶¶ 42, 53. In her opposition brief, Moy additionally argues that "the disparate treatment of Plaintiff herself, [including] the alteration of her work conditions [presumably in reference to her exclusion from the organizational chart and from meetings and opportunities]," and "the alteration of the terms of her employment, [presumably in reference to being assigned a supervising attorney role]" constitute a hostile work environment. *See* Pl.'s Opp'n 14.

The Court, however, is aware of no caselaw supporting Moy's argument that the actions she points to, taken together or in isolation, constitute severe or pervasive discriminatory conduct under the federal standard. On the contrary, where courts in this Circuit have addressed similar allegations, they have concluded that they are insufficient to allege a federal hostile work environment claim.[8] *See, e.g.*, *Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 119 (2d Cir. 2010) (holding that plaintiff's allegations "that defendants wrongly excluded her from meetings . . . [and] refused to answer work-related questions . . . did not support a finding of hostile work environment"); *Davis-Molinia*, 2011 WL 4000997, at *11 (finding that "exclu[sion] from staff meetings," "deliberate avoid[ance]," yell[ing] and talk[ing] down to" was not enough to show that defendant's conduct constituted a hostile work environment); *Littlejohn*, 795 F.3d at 321 (concluding that general hostility directed at plaintiff was insufficient to allege a hostile work environment).

Accordingly, even construing Moy's pleadings in the light most favorable to her, Moy's federal hostile work environment claim cannot survive. It is therefore dismissed.

### 2. *NYSHRL and NYCHRL*

#### a. Legal Standard

The federal "severe or pervasive" standard does not apply to NYCHRL claims. *Mihalik*, 715 F.3d at 109. Instead, to allege a hostile work environment claim under the NYCHRL and post-amendment NYSHRL, a plaintiff must allege "unequal treatment based on membership in a protected class." *Nieblas-Love v. N.Y.C. Hous. Auth.*, 165 F. Supp. 3d 51, 68 (S.D.N.Y. 2016);

---

[8] As discussed *supra*, employment discrimination claims under Section 1981 are analyzed under the same standard as Title VII claims. Accordingly, throughout this Opinion & Order, the Court cites both Title VII and Section 1981 caselaw in its analyses. *See Bermudez v. City of New York*, 783 F. Supp. 2d 560, 576 (S.D.N.Y. 2011) (citing *Whidbee*, 223 F.3d at 69).

*see also Lenart*, 131 F. Supp. 3d at 69 (holding the plaintiff's "thin" allegations were nonetheless sufficient to state a claim under the NYCHRL where the plaintiff alleged that he had to "undergo extra interviews and psychological testing, whereas his female colleagues did not," and that he had heard his supervisors express a preference for working with women).  Because the NYCHRL does not differentiate between discrimination and hostile work environment claims, the court "should perform the same analysis on Plaintiff's hostile work environment claims as it does on [her] discrimination claims." *Konteye v. N.Y.C. Dep't of Educ.*, No. 17 Civ. 2876, 2019 WL 3229068, at *7 (S.D.N.Y. July 18, 2019).

### b. Application

"Hostile work environment claims are analyzed under the same provision of the NYCHRL as discrimination claims, and the standards for each are the same." *Donahue v. Asia TV USA Ltd.*, 208 F. Supp. 3d 505, 516 (S.D.N.Y. 2016).  Accordingly, for the reasons set forth in the Court's employment discrimination analysis above, the Court concludes that Moy plausibly alleges that she was treated "less well" than other employees based on her race, color, national origin, and gender—and that this is sufficient to plead her state and city hostile work environment claims.  Defendants' motion to dismiss Moy's state and city hostile work environment claims is therefore denied.

### C. Retaliation

For the reasons set forth herein, Moy's federal, state, and city retaliation claims survive.

### 1. Section 1981

### a. Legal Standard

To plausibly allege a federal retaliation claim, "a plaintiff must show: (i) [she] engaged in protected activity; (ii) the defendant was aware of that activity; (iii) [plaintiff] suffered a[n] . . .

adverse [employment] action; and (iv) there was a causal connection between the protected activity and that adverse action." *Livingston*, 563 F. Supp. 3d at 245.

As relevant to this case, "protected activity" under Section 1981 includes "oppos[ing] any practice made an unlawful employment practice by [federal statute], or . . . participat[ing] in any manner in an investigation, proceeding, or hearing under [federal statute]." *Bermudez*, 783 F. Supp. 2d at 575. Informal complaints to managers will only qualify as "protected activities" within this definition where the complaints are "sufficiently specific to make it clear that the employee is complaining about conduct prohibited by" Section 1981. *Risco v. McHugh*, 868 F. Supp. 2d 75, 110 (S.D.N.Y. 2012). As to the adverse employment action, plaintiffs must allege only "some harm respecting an identifiable term or condition of employment" that need not be "significant . . . [o]r serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Muldrow*, 144 S. Ct. at 974.

Finally, Section 1981 requires an allegation of "but-for" causation. That is, a plaintiff bringing a Section 1981 retaliation claim must allege that "the adverse [employment] action would not have occurred in the absence of the [employer's] retaliatory motive." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 91 (2d Cir. 2015). This causation element "may be shown by direct evidence of retaliatory animus or inferred through temporal proximity to the protected activity." *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018). However, courts in the Second Circuit have held that temporal proximity between a protected activity and an adverse employment action is insufficient to survive a motion to dismiss where the alleged causal connection between the two events is "highly speculative." *Spires v. MetLife Grp., Inc.*, No. 18 Civ. 4464, 2019 WL 4464393, at *9 (S.D.N.Y. Sept. 18, 2019). The "allegations in the

24

complaint need only give plausible support to the reduced prima facie requirements" "in the initial phase of" litigation. *Littlejohn*, 795 F.3d at 316.

### b. Application

Moy successfully alleges a Section 1981 retaliation claim.

First, Moy alleges that she engaged in a protected activity when she "set out the information regarding the exclusion and demotion of the employees of color," including herself, on the chart, *see* Am. Compl. ¶ 31, and thereby complained of unlawful discriminatory treatment. Second, Moy alleges that Defendants Paul Napoli and Marie Napoli were aware of that protected activity, as it was to these Individual Defendants that Moy lodged her complaints. *See id.* Third, Moy alleges at least two viable adverse employment action claims for the purposes of Section 1981: demotion and termination. *See supra*.

The key issue here, then, is the fourth element: i.e., whether Moy raises a reasonable inference that either of those adverse actions would not have occurred but for Moy's complaints about the organizational charts. Moy primarily argues that her Section 1981 retaliation claim survives because "[w]here, as here, the adverse employment actions directly follow the protected activity, the timing alone is sufficient to establish the requisite causal connection." Pl.'s Opp'n 19.

The Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001). But for an inference of discrimination to be plausible based on temporal proximity, courts "uniformly hold that the temporal proximity must be very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-

25

74 (2001); *see also Risco*, 868 F. Supp. 2d at 113-14 ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close.").

Here, Moy was demoted shortly after she complained about the organizational charts, and was terminated within six months. *See* Am. Compl. ¶¶ 37, 44-d, 66. Whether the six-month gap between Moy's protected activity and her termination was too long to raise an inference of discrimination is a close call. *See Paupaw-Myrie v. Mount Vernon City Sch. Dist.*, 653 F. Supp. 3d 80, 104 (S.D.N.Y. 2023) (noting that "courts have found that four and a half months is too long to draw a causal inference based on a temporal relationship"). But the shorter time gap between Moy's protected activity and her demotion is sufficiently close in time to raise an inference of discrimination, at least for purposes of resolving the motion to dismiss.[9] *See Sirois v. Long Island R.R. Co.*, 797 F. App'x 56, 60 (2d Cir. 2020) ("Temporal proximity may support a *prima facie* inference that the protected activity was a contributing factor, but only where the protected act and the retaliation occur in quick succession."). Defendants' motion to dismiss Moy's Section 1981 retaliation claim is therefore denied.

---

[9] Moy alleges that "[f]ollowing Plaintiff raising questions about the failure of Defendants to initially include her on the organizational chart and the exclusion of Ms. Palmore on the organizational chart, . . . Plaintiff was demoted to 'supervising atty' in the NYC office." Am. Compl. ¶ 36. Plaintiff called Individual Defendant Paul Napoli "immediately" "[c]oncerning this demotion." *Id.* ¶ 37. Moy further alleges that "[a]pproximately two (2) days" after this call, Individual Defendant Paul Napoli "made an announcement . . . that Plaintiff was still 'Co-Head' of Personal Injury." *Id.* ¶ 37. While the timeline is not entirely clear, the Court infers from these allegations that Moy's demotion occurred very shortly after her protected activity.

### 2. *NYSHRL and NYCHRL*

#### a. Legal Standards

As under the federal standard, "[t]o establish a *prima facie* case of retaliation under the NYCHRL [and post-amendment NYSHRL], a plaintiff must show that: (1) [s]he participated in a protected activity; (2) the defendant knew about h[er] participation; (3) the defendant took an employment action that disadvantaged the plaintiff *in any manner;* and (4) a causal connection existed between the protected activity and the negative employment action." *Fattoruso v. Hilton Grand Vacations Co., LLC*, 525 F. App'x 26, 27 (2d Cir. 2013).

Retaliation claims brought under the NYSHRL and NYCHRL need not allege a formal "adverse employment action." *See Mayers v. Emigrant Bancorp, Inc.*, 796 F. Supp. 2d 434, 446 (S.D.N.Y. 2011). Rather, an employee need only allege that her employer engaged in conduct that was "reasonably likely to deter a person from engaging in protected activity." *See Maynard v. Montefiore Med. Ctr.*, No. 18 Civ. 8877, 2021 WL 396700, at *6 (S.D.N.Y. Feb. 4, 2021). Even under the state and city provisions' broad standards, however, a plaintiff alleging retaliation "still must establish that there was a causal connection between [her] protected activity and the employer's subsequent action." *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 449 (S.D.N.Y. 2018).

#### b. Application

Moy's retaliation claims under the NYCHRL and NYSHRL succeed for the same reasons that her federal retaliation claim succeeds. As discussed *supra*, Moy plausibly alleges that she engaged in a protected activity, that at least two named Defendants were aware of that activity, and that Defendants took actions that disadvantaged her by demoting her. Furthemore, the very close temporal proximity between Moy's protected activity and Defendants' actions against her

27

raises an inference of discrimination.  This is sufficient to sustain her state and city retaliation claims at this stage.  *See Fattoruso*, 525 F. App'x at 27.

### III.    Individual Liability

"[I]ndividuals may be held liable under § 1981" where a plaintiff "demonstrate[s] some affirmative link" or "personal involvement" to "causally connect the actor with the discriminatory action."  *Whidbee*, 223 F.3d at 75.  The NYSHRL and NYCHRL "provide for individual liability for persons who aid, abet, incite, compel, or coerce the doing of any of the acts forbidden thereunder, or attempt to do so."  *Hagan v. City of New York*, 39 F. Supp. 3d 481, 514 (S.D.N.Y. 2014) (citing N.Y. Exec. L. § 296(6) and N.Y.C. Admin. Code § 8–107(6)).  "This provision reaches conduct by a supervisor or a co-worker who actually participates in the conduct giving rise to a discrimination claim."  *Id*.  An individual employee may be held personally liable "regardless of ownership or decisionmaking power," so long as that employee "actually participates in the conduct giving rise to the plaintiff's discrimination or retaliation claim."  *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 366 (S.D.N.Y. 2012).

For substantially the same reasons discussed in the Court's analysis of its jurisdiction over Paul and Marie Napoli, *see supra*, the Court concludes that Moy has adequately pled the Napolis' "actual participation" in conduct giving rise to her state and city discrimination and hostile work environment claims.  Paul Napoli was Moy's "direct superior," with whom Moy once regularly met but who discriminatorily excluded Moy from meetings.  *See* Am. Compl. ¶¶ 44-e, 44-f.  The Napolis "made it clear to [Moy] in emails that she would not get any support or help like the other male attorneys in the Department."  *Id.* ¶ 73.  Moy has therefore adequately alleged their personal involvement as to her surviving claims.

Moy has failed to make the case for Werle's individual liability as to any of her surviving claims. Moy alleges the following against Werle: Paul Napoli excluded Moy from meetings because "Werle and [other colleagues] did not want to bother" Plaintiff when she was preparing for a trial, *id.* ¶ 35; Werle would not broadly circulate the results of a survey on discrimination at the firm, *id.* ¶¶ 50-51; Werle offended Moy by telling her that "as a Latina woman . . . I have never experienced discrimination, so I don't know what you mean by discrimination," *id.* ¶ 52; Werle informed Moy via telephone and email that Moy's employment had been terminated, *id.* ¶¶ 69, 72; and Werle did not address Moy's requests for additional staff support, *id.* ¶ 73. These allegations are insufficient to establish Werle's personal involvement with respect to any of Moy's discrimination or hostile work environment claims. *See Hagan*, 39 F. Supp. 3d at 515 (dismissing claims against an individual defendant even where plaintiff had accused the defendant of "only hir[ing] Caucasians; refus[ing] to address complaints of discrimination and interfer[ing] with [the plaintiff's] investigations; exhibit[ing] racial animus against an Asian employee; and retaliat[ing] against [the plaintiff] . . . [by] interfer[ing] with her ability to do her job."). Accordingly, claims against Werle are dismissed.

Finally, Moy has failed to allege Badala's individual liability as to any of her surviving claims. Moy's only allegations against Badala are that he informed Moy via telephone and email that Moy's employment had been terminated, Am. Compl. ¶¶ 69, 72, and later sent a letter "on behalf of the Firm . . . alleg[ing] that Plaintiff's new employer had to step down from . . . 226 cases because the Firms [*sic*] clients have not provided Ms. Moy with informed consent." *Id.* ¶ 94. Such facts "do not provide any basis for finding that []he was involved in discrimination" or in any conduct giving rise to Moy's surviving claims. *Hagan*, 39 F. Supp. 3d at 515. Accordingly, claims against Badala are dismissed.

**CONCLUSION**

For the reasons set forth herein, Defendants' Rule 12(b)(2) motion is **DENIED**.

Defendants' Rule 12(b)(6) motion is **GRANTED IN PART AND DENIED IN PART**.

Specifically, all claims against Werle and Badala are dismissed.  To the extent Count I sets forth

a Section 1981 hostile work environment claim, it is dismissed.  All remaining claims, as alleged

against Napoli Shkolnik and Individual Defendants Paul Napoli and Marie Napoli, survive.

Within **two weeks** of the date of publication of this Opinion & Order, the parties are

**ORDERED** to file (1) a joint status letter and (2) a proposed case management plan and

scheduling order, available at https://www.nysd.uscourts.gov/hon-dale-e-ho.

The Clerk of Court is respectfully requested to terminate ECF No. 21 and to terminate

Gloria Werle and Salvatore C. Badala from the docket.

SO ORDERED.

Dated:  July 22, 2024
        New York, New York

_____

DALE E. HO
United States District Judge

30